548 P.2d 863

**FIRST NATIONAL BANK IN TUCUM-
CARI, Tucumcari, New Mexico,
Plaintiff-Appellee,**

v.

**BERGER BRIGGS REAL ESTATE & IN-
SURANCE, INC., Defend-
ant-Appellant.**

No. 10453.

Supreme Court of New Mexico.

April 22, 1976.

Oldaker & Oldaker, Michael P. Watkins, Leslie Rakestraw, Albuquerque, for defendant-appellant.

Rowley & Bowen, Ricky D. Purcell, Tucumcari, for plaintiff-appellee.

OPINION

OMAN, Chief Justice.

This cause arises from a counterclaim filed by Berger Briggs Real Estate & Insurance, Inc. (Broker) against the First National Bank in Tucumcari (Bank) in a real estate mortgage foreclosure suit brought by the Bank as assignee of a mortgage lien and the indebtedness secured thereby. By its counterclaim, Broker sought to foreclose a claimed equitable lien upon the real estate. This claimed equitable lien supposedly secured the balance of a real estate commission owing to Broker by the sellers and mortgagees of the real estate, a Mr. and Mrs. Batie (Baties).

The district court concluded that Broker did not have an equitable lien upon the real estate or upon the funds representing the indebtedness secured by the mortgage lien, which indebtedness is evidenced by a purchase money promissory note given by the purchaser to the Baties. A judgment was entered accordingly and Broker has appealed. We affirm.

The following are the undisputed relevant facts:

(1) On March 24, 1972, the Baties, as owners and sellers of the real estate, entered into a Real Estate Commission Agreement with Broker, a licensed real estate broker in New Mexico, whereby they agreed to pay Broker a commission of $8,320.00 for negotiating and bringing about the consummation of the sale of the real estate. The purchaser signed the agreement but made no promise concerning the payment of the commission.

(2) The Real Estate Commission Agreement described the property and recited that $5,000.00 of the commission was to be paid on or before May 15, 1972; the balance of the commission in the amount of $3,320.00 was to be paid on or before March 24, 1975; the agreement was to be "binding upon the parties hereto, their successors and assigns"; and the agreement was to be "recorded in Quay County."

(3) The $5,000.00 due on or before May 15, 1972 was paid, but the $3,320.00 balance of the commission remains unpaid.

(4) The commission agreement was recorded in Quay County on June 2, 1972.

(5) On March 24, 1972, the purchaser of the real estate and his wife executed and delivered to the Baties a purchase money note in the principal amount of $65,000.00. They also executed and delivered to the Baties, to secure the payment of said note, a mortgage deed covering the real estate. This mortgage was recorded on June 2, 1972.

(6) On August 9, 1972, the Baties executed and delivered to the Bank their promissory note in the amount of $50,000.-00 and gave the Bank a collateral pledge and assignment of the aforesaid purchase money note and mortgage deed as security for payment of said $50,000.00 note. The makers of both notes defaulted in their payments thereon, and the Bank brought the foreclosure suit in which Broker filed its counterclaim as hereinbefore stated.

As stated above, the district court concluded that Broker had no equitable lien upon the real estate or upon the monies due on the purchase money note secured by the lien of the mortgage deed. Broker here urges error on the part of the district court and asserts an equitable lien on the real estate. Its contention is that it can reasonably be implied from the execution of the agreement, and particularly from the foregoing stated provisions of the agreement, that it was the intent of the parties to create an equitable lien upon the real estate to secure payment of the commission.

There is no language in the agreement which reasonably suggests that Broker was to have a lien upon the real estate or to in any way be secured in the payment of its commission beyond the promise of the Baties to pay. If Broker intended to acquire a lien of any sort upon the real estate, it should have in some way made this at least reasonably clear by language in the Real Estate Commission Agreement, which was a form agreement used by Broker. If it intended to encumber the real estate with a lien and put others on notice thereof by the language of this form agreement, it could easily have done so and should have done so, assuming the Baties and purchaser would have agreed.

We have previously held that the intention of a promissor to create a lien must be clearly disclosed in the agreement before an equitable lien arises. *Reserve Plan, Inc. v. Peters*, 71 N.M. 25, 375 P.2d 576 (1962). See also *Snipes v. Dexter Gin Co.*, 45 N.M. 475, 116 P.2d 1019 (1941). This requirement concerning the disclosure of intent is expressed in 4 J. Pomeroy, Eq-

uity Jurisprudence § 1235 (5th ed. S. Symons 1941) as follows:

"In order, however, that a lien may arise in pursuance of this doctrine, *the agreement* must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and *must indicate with sufficient clearness an intent that the property* so described, or rendered capable of identification, *is to be held, given, or transferred as security for the obligation.*" (emphasis added).

Section 1237 of the same work also states that the intent to make identified property security for the fulfillment of an obligation must appear in the express contract or promise.

In 51 Am.Jur.2d Liens § 27 (1970), it is stated:

"In the creation of a lien by express contract, *the agreement must clearly show an intention to create such lien,* the property sought or intended to be charged must be clearly described or identified, and the property must be distinctly appropriated to or dedicated to, or held as security for, the payment of the debt or obligation in question." (emphasis added).

 Broker seeks to avoid the effect of the failure of the agreement to clearly express an intention to create a lien by urging "that the lien arose by implication from the actions of the parties and from the provisions of the Real Estate Commission Agreement." However, it cites no authority for this position, except for authority that a lien may be created by implication from the relations and dealings of the parties. *Morrison Flying Service v. Deming National Bank,* 404 F.2d 856 (10th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). We agree that under some circumstances a lien may arise by implication, but a mere creditor-debtor relationship which arises between a broker who sells property and the owner thereof who employs the broker to consummate the sale does not create a lien upon the property as security for the broker's commission. The written agreement with which we are here concerned just failed to express any intent on the part of either the Baties, who were the promissors and sellers of the property, or on the part of the purchaser to subject the property to a lien as security for the payment of Broker's commission, and no such lien arose from the relationship and actions of the parties.

The judgment of the district court should be affirmed.

IT IS SO ORDERED.

McMANUS and MONTOYA, JJ., concur.